IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER L. VAUGHN,     C 11-4274 TEH (PR)

   Petitioner,

  v.          ORDER DENYING PETITION FOR WRIT
              OF HABEAS CORPUS; DENYING
MICHAEL D. MCDONALD, Warden,  CERTIFICATE OF APPEALABILITY

   Respondent.
_____/

   Petitioner Christopher Vaughn, a state prisoner incarcerated at the High Desert State Prison, located in Susanville, California, filed this _pro se_ action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

I

   On October 3, 2008, an Alameda County jury found Petitioner guilty of two counts of aggravated sexual assault of a child and one count of continuous sexual abuse of a child. 5 Clerk's Transcript (CT) 1103-1112. Petitioner was sentenced to thirty years to life in prison for the two counts of aggravated

1

sexual assault of a child, plus sixteen years in prison for the count of continuous sexual abuse. 5 CT 1121.

On July 31, 2009, Petitioner appealed his conviction in the California Court of Appeal. Respondent's Exhibit B, Appellant's Brief. On May 18, 2010, the California Court of Appeal filed an unpublished opinion affirming the judgment. Respondent's Exhibit D, People v. Vaughn, 2010 WL 1974057 (Cal. Ct. App. May 18, 2010). On August 11, 2010, the California Supreme Court denied Petitioner's petition for review. Respondent's Exhibit F. Petitioner did not file a state habeas petition.

On August 3, 2011, Petitioner filed the instant federal petition raising the claim that there was insufficient evidence to support his conviction for continuous sexual abuse. On December 15, 2011, this Court ordered Respondent to show cause as to why the petition should not be granted. Respondent filed an answer and Petitioner filed a traverse. In his traverse, Petitioner states that he raised two other claims in his petition, but his petition asserts only the one claim based on insufficient evidence.

II

The following factual background is taken from the order of the California Court of Appeal.[1]

The six victims, Jane Doe 4, born on May 19, 1983, Diana Doe, born on November 29, 1985, Jane Doe 3, born on February 12, 1987, Jane Doe 2, born on February 21, 1988, John Doe 1, born on

---

[1] The state court addressed the appeals of Petitioner and his brother, Michael Vaughn, in the same opinion. This Court only considers the facts relevant to Petitioner's case.

2

1  July 16, 1991, and Jane Doe 1, born on October 16, 1992, are
2  siblings.  3 Reporter's Transcript (RT) 376, 455, 2 RT 275, 144, 3
3  RT 325, 2 RT 213.  Petitioner and his brother, Michael Vaughn, are
4  cousins of the victims.  The Doe siblings were removed from their
5  parents' custody when Jane Doe 4 was about ten years old.  They
6  moved into the home of their aunt, Nancy Cordova, in Oakland, where
7  she lived with her sons, Petitioner and Michael Vaughn, and her two
8  daughters.
9          The following colloquy took place at Petitioner's trial,
10 where the prosecutor and the court asked Jane Doe 4 the following
11 questions:

```
    Q:   What part of his body touched your body?
    A:   His penis touched my vagina.

    ...

    Q:   And did this happen just one time, or did this
         happen more than once?
    A:   Once or twice.

    ...

    Q:   Did Chris, at any other point, ever touch you
         with his hand or anything else in a sexual way?
    A:   Yes . . . He put his finger in my vagina.

    ...

    Q:   Was it [the digital penetration] close in time
         to when he had sex with you or was it far apart?
    A:   It was far apart.

    ...

    Q:   When you say it was far apart, how far apart was
         it?
    A:   Um-

    Q:   Was it days, months, years?
    A:   Probably months.

    Q:   Months?  Okay.  And did he put his finger inside
```

3

```
            of your vagina first, or did he have sex with
            you first?
     A:     He put his finger inside me first.

     ...

     Q:     And how long was there between the first time
            that he had sex with you and the second time
            that he had sex with you?
     A:     Like, um – probably like, uh, months after that.

     ...

     Q:     Was it like one month or two months or six
            months or –
     A:     I don't remember.  I just know it happened,
            yeah.

     Q:     It was months?
     A:     Yeah.

     Q:     More than one?
     A:     No. I think it was probably like one.

     Q:     Okay, and what about between when he put his
            fingers inside of you and when he had sex with
            you, you said months.  Is that more than one
            month before?

     ...

     A:     I didn't say months.

     Q (from the court):
            So the question is: When you said that it was months
            after he put his finger in your vagina after the
            intercourse, how many months are we talking about?
     A:     I'm not really sure. I don't really remember.

     Q (from the court):
            Okay. More than one?
     A:     Probably, yes.

     Q (from the court):
            More than three?
     A:     No.

     Q: (from the court):
            Okay. Less than three?
     A:     Yeah.

     ...
```

4

```
Q:   When you say you think it was more than one, but
     less than three - okay, but at first you said it
     was months.  So it could have been two months?
A:   Probably, yeah.

Q:   And then between the time that - and I know
     sometimes it seems like I am asking stupid
     questions, so I'm sorry, okay?  But between the
     first time that he had sex with you and the
     second time, could that have been over a month?
A:   I guess.  I don't know. I don't really remember.

Q:   Okay.  But about a month?
A:   Yeah.
```

3 RT 409-413.

### III

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant

the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, __ U.S. __, 131 S. Ct. 1305, 1307 (2011) (citation omitted).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002). This Court looks to the California Court of Appeal's written opinion from May 18, 2010 affirming the trial court judgment.

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims.

6

**IV**

**A**

Petitioner argues that there was insufficient evidence to support his conviction on count nine for a violation of California Penal Code § 288.5, which requires that his acts of substantial sexual contact with Jane Doe 4 occurred over a period of not less than three months.

The Due Process Clause "[p]rotects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim which, if proven, entitles him to federal habeas relief. <u>Jackson v. Virginia</u>, 443 U.S. 307, 321, 324 (1979). The federal court determines "[w]hether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). The <u>Jackson</u> standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004).

On habeas review, a federal court evaluating the sufficiency of the evidence under <u>Winship</u> and <u>Jackson</u> should take into consideration all of the evidence presented at trial. <u>LaMere v. Slaughter</u>, 458 F.3d 878, 882 (9th Cir. 2006). If confronted by a

1 record that supports conflicting inferences, a federal habeas court
2 "[m]ust presume – even if it does not affirmatively appear in the
3 record – that the trier of fact resolved any such conflicts in favor
4 of the prosecution, and must defer to that resolution." <u>Jackson</u>,
5 443 U.S. at 326. Credibility determinations by a trier of fact are
6 therefore entitled to near-total deference. <u>Bruce v. Terhune</u>, 376
7 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of
8 circumstances, <u>Jackson</u> does not permit a federal habeas court to
9 revisit credibility determinations. <u>Id.</u> at 957-58.

10      Under 28 U.S.C. § 2254(d), a federal habeas court applies
11 <u>Jackson</u> and <u>Winship</u> with an additional layer of deference. <u>Juan H.</u>
12 <u>v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas
13 court must ask whether the operative state court decision
14 "[r]eflected an 'unreasonable application of' <u>Jackson</u> and <u>Winship</u> to
15 the facts of the case." <u>Id.</u> at 1275 (citing 28 U.S.C.
16 § 2254(d)(1)).

17                               **B**

18      California's criminal statute prohibiting continuous
19 sexual abuse of a child provides:

20-24     Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

24 Cal. Penal Code § 288.5(a).

25      Section 288.5 relates "to 'continuous sexual abuse' and
26 accordingly requires at least three acts of sexual misconduct with

8

the child victim over at least three months to qualify for prosecution of persons who are either residing with, or have 'recurring access' to, the child." People v. Rodriguez, 28 Cal. 4th 543, 550 (2002).

Petitioner argues that the prosecutor gave Jane Doe 4 every opportunity to assert that three or more months passed between the first and last acts of substantial sexual contact, but Doe never was able to definitively testify when the acts occurred. Petitioner contends that Jane Doe 4's testimony was "riddled with doubts, equivocation, and inconsistencies and amounted to pure guesswork," because "she clearly did not remember" how many times or how often he had substantial sexual contact with her. Although Jane Doe 4's testimony was inconsistent, she did testify that the digital penetration occurred two months before the first act of sexual intercourse, and that the second act of sexual intercourse occurred one month after the first act of intercourse. 3 RT 413. Jane Doe 4's testimony could give rise to conflicting inferences, but Jackson requires the reviewing court to presume that the trier of fact resolved any conflicts in favor of the prosecution, and must defer to that resolution. After viewing the evidence in the light most favorable to the prosecution, it cannot be said that no rational trier of fact could have found that Petitioner engaged in sexual acts over a period of time "not less than three months in duration."

The state court denied Petitioner's claim, finding that there was sufficient evidence in the record for a rational trier of fact to conclude that he was guilty of violating California Penal Code § 288.5 (a). The California Court of Appeal stated:

9

> Jane Doe 4 . . . described three acts of substantial sexual contact, two acts of intercourse about one month apart, and one act of digital penetration separated in time from the intercourse by "probably" two months. Christopher mischaracterizes her testimony by describing her as having said that the time between the first and last acts of sexual contact "was probably more than one month but was less than three months and was not more than three months, and that it could probably have been two months but she did not really remember." This characterization ignores the distinction in the testimony between the time separating the two acts of intercourse from one another, and the time separating the two acts of intercourse from the digital penetration. Jane Doe 4 described three acts spanning a total time of three months. The prosecution need not prove the exact dates of the predicate sexual offenses in order to satisfy the three-month element. Rather, it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts. Jane Doe 4's testimony was sufficient to support the conviction on this count.

**Vaughn**, 2010 WL 1974057 at *20-21

The state appellate court applied the standard under the California Constitution by looking at all of the evidence in the light most favorable to the prosecution. This is identical to the **Jackson** standard. Applying this standard, the court found that the record could reasonably support a finding of guilt beyond a reasonable doubt. The court's rejection of Petitioner's insufficiency of evidence claim was not contrary to or an unreasonable application of Supreme Court authority or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, this claim for habeas relief is denied.

V

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

Further, a Certificate of Appealability is DENIED. **See**

10

Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

  The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.

  IT IS SO ORDERED.

DATED  *10/11/2012*           
                 THELTON E. HENDERSON
                 United States District Judge

G:\PRO-SE\TEH\HC.11\Vaughn 11-4274 Deny HC.wpd

11